## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**UNITED STATES OF AMERICA**                      **PLAINTIFF**

**V.**                                    **CASE NO. 4:09CR073**

**BRIAN JOHNSON**                            **DEFENDANT**

### SENTENCING MEMORANDUM

On December 2, 2010, Your Honor will sentence Mr. Brian Johnson for his violation of Section 841(a), (b)(1)(b) of the Title 21 of the United States Code, for which he pled guilty on January 19, 2009. This sentencing memorandum is submitted in support of the defendant's position for sentencing. According to the Presentence Investigation Report, Probation has calculated a guidelines range of 188 to 235 months, based on a total offense level of 31 and a criminal history category of VI. Presentence investigation Report ("PSR"), § 115. The defendant submits that the guidelines range is far greater than necessary to satisfy the purposes of sentencing for the reasons discussed below. As such, the defendant, by and through counsel, implores this Court to evaluate all 18 U.S.C. § 3553 factors in determining an adequate sentence.

### I. The Advisory Guidelines Range

Initially, the PSR assigned a base offense level of 26 and a criminal history category of III. After subtracting 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1(b), the defendant's potential imprisonment range would have been approximately 70 to 87 months. However, because Mr. Johnson had previously been convicted of two "controlled substance offenses", the PSR designated him a career offender under U.S.S.G. § 4B1.1. This had the effect of producing a base offense level of 34 and an imprisonment range of 188-235 months (final

level 31, criminal history category VI). Mr. Johnson acknowledges the mechanical applicability of the 8-level enhancement based on the career offender status but maintains that the enhancement itself, as well as the degree of the enhancement, is greater than necessary to satisfy the purpose and goal of sentencing. As such, it has been determined that sentencing courts may disagree with a particular guideline on policy grounds, and may impose a non-guideline sentence because the guideline provision itself lacks basis in empirical data or study. *Kimbrough v. United States*, 128 S. Ct. 558, 566-69, 574-75 (2007).

## II. Consideration of the 18 U.S.C. § 3553(a) Factors in Determining the Appropriate Sentence

One of the major steps in determining an appropriate sentence is the Court's consideration of the relevant § 3553(a) factors. One of those factors is the guideline range, of course. But, in contrast to sentencing practice only a few short years ago, that one factor is no longer the end of the discussion. The Supreme Court has firmly instructed that sentencing courts "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 128 S. Ct. 586 (2007) (citing *Rita v. United States,* 127 S. Ct. 2456 (2007)). Rather, a sentencing court must make an "individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Above all, a court's final determination of a sentence must reflect "§ 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)," namely, retribution or just punishment, deterrence, incapacitation, and rehabilitation. *See Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007).

The defendant puts forth the following recommendations addressing the sentencing factors the Court may consider but are certainly not required to consider. Upon his arrest, Mr. Johnson accepted responsibility for his actions and never attempted to shift blame on any other

individuals. He does not dispute the obvious, that this offense is serious in nature. However, there is no evidence of violence or weapon possession on the defendant's part, so the offense is not aggravated in that sense. He is not minimizing his conduct and understands that he must face the consequences of his actions.

The minimum mandatory for the offense for which this Court is sentencing is five years but with the career offender status, the minimum according to the guideline range is 188 months, an extensive amount of time. Although Mr. Johnson has been designated as a career offender under the guidelines, he has not been incarcerated for this past conduct. Given that Mr. Johnson has not been incarcerated for a lengthy time period and this will be the first time Mr. Johnson will serve time in Federal Prison, it seems reasonable to believe that the guideline range is more than necessary to accomplish the purpose of sentencing. While it is likely necessary to impose a significant sentence in this case in order to deter defendant because shorter terms had not produced a deterrent effect, to sentence within the guideline would in essence subject the defendant to a sentence far greater than necessary.

### III. Career Offender Status

The guidelines called for a term of 188 to 235 months. As noted, the range was high because defendant qualified as a career offender. Absent that designation, the range would have been approximately 77 to 87 months under the PSR's calculations. In looking at the predicate offenses, the defendant's position is that the guidelines produce a term greater than necessary to satisfy the purposes of sentencing. Defendant's first career offender predicate was a sale of marijuana in 1998 when he was in his youthful years. That case involved approximately 9 grams of marijuana, not an amount indicative of a large scale dealer.

The Sentencing Commission has acknowledged, in its recent Fifteen Year Report, that when career offender status is based on relatively minor drug offenses, the guidelines may create a sentence greater than necessary. *See* USSC, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Coals of Sentencing Reform ("Fifteen Years"),* at 133-34 (Nov. 2004). Specifically, the Commission has noted that unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, retail-level drug traffickers are readily replaced by new drug sellers. *Id.* Thus, incapacitating a low-level drug seller for a long term prevents little, if any, drug selling; the crime is simply committed by someone else. The Commission has further noted that the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions are much lower than other offenders who are assigned to criminal history category VI based on points alone. *Id.* The career offender guideline thus makes the criminal history category a less accurate measure of recidivism risk than it would be without the inclusion of offenders qualifying because of prior drug offenses. *Id.* In fact, in its fifteen year review of the guidelines, the Commission noted that the use of drug trafficking offenses as a career offender predicate contributed to racial disparity in sentencing, did not serve the goal of general or specific deterrence, and was not a good predictor of recidivism. *See* USSC, *Fifteen Years of Guidelines Sentencing,* at 144-34 (2004).

Defendant's second career offender predicate was a possession of marijuana (34 grams) with intent to distribute. At the time of this offense, defendant was only – years old. While I understand that this offense falls within the definition of "controlled substances offense" for purposes of the career offender designation, it appears that these minor offenses were not what the Commission intended when formulating this provision for career offense status. This

category unfairly lumps the defendant in with those hardcore criminals to whom the categorization really belongs. Again, the small amount of drugs involved in this offense is not an amount indicative of a large scale dealer considering that Mr. Johnson was also a user of drug himself.

## IV. Crack/Powder Ratio

Given that the guidelines are now advisory under *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts have the authority and discretion to substitute a lesser crack/powder ratio than the current 100-to-1 ratio. The Commission also recognizes that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. *See* USSC, *Fifteen Years of Guidelines Sentencing,* at 153-64 (2004).

. But the 100-to-1 ratio can lead to the "anomalous" result that "retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced." *Id.* at 174.

The Court held that even when a particular defendant in a crack cocaine case presents no special mitigating circumstances, such as no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, or no post-offense rehabilitation, a sentencing court may vary downward from the advisory guideline range, and the court may do so based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine created an unwarranted disparity within the meaning of the statutory sentencing factors and was at odds with those factors. *Spears v. United States,* 129 S. Ct. 840 (2009). Nevertheless, the Fair Sentencing Act

was recently enacted in an effort to resolve the crack/powder cocaine disparity. The Act narrowed the crack/powder sentencing disparity from 100:1 to 18:1. While this is an extremely important step towards eliminating the disparity between the two drug forms, a sizeable sentencing gap still remains as this change in the law primarily affects the statutory minimums involved with the two drugs.

## V.  Consideration of the Factors Other than the Guidelines

Whereas a few years ago, the Court would have been bound by the overly punitive guidelines, *Booker, Rita, Gall,* and *Kimbrough* offered a new lease on life for both the individualized approach to sentencing and for the sentencing common law initially envisioned by the Sentencing Commission. This case presents a perfect opportunity for meaningfully implementing that approach. Meaningful consideration of the history of the guidelines, as well as Mr. Johnson's individual circumstances, is now possible and, indeed, necessary for determining the appropriate sentence. All of these circumstances, when considered in light of the purposes and goals of sentencing, compel the conclusion that sentence below the advisory range is the minimally sufficient sentence in this case.

There is no point in disputing that Mr. Johnson has made many poor decisions in his life, but there is also no dispute that he was handed few, if any, breaks. His childhood was crazy and rough. He was raised primarily by his grandmother who suffered from severe medical illnesses, forcing him to step in while still a child and help provide food for his family. Without any compassionate intervention or constructive guidance, he turned to the streets to provide the help his family needed. His life since that time has been nothing short of chaotic and traumatic. His father was never a part of his life while his brother committed a murder-suicide at the age of 23. Yet, despite this chaos, trauma and loss, nowhere in the record does it indicate that anyone

anywhere ever stepped in to help this child, then teenager, then young man. The result, while not inevitable, is hardly surprising. Mr. Johnson now stands before this Court with a criminal history record and an instant offense that ensure a long period of incarceration.

The question, of course, is how long that term should be. For all the reasons already discussed, Mr. Johnson submits that the guidelines range is not a helpful guide to the minimally sufficient sentence. As demonstrated, the beginning offense level is based on a specific offense characteristic – the predicate prior convictions – that as not shown to be correlated with sentences imposed. Moreover, those priors are already taken into account in calculating Mr. Johnson's criminal history category, a factor that was found to correlate with sentences imposed. The dramatic increases in the base offense level based on the career offender designation, and the resulting increase in average sentence length must be seen for what they are – measures that serve the punitive and incapacitative purposes of sentence at the expense of all others. This is an abdication, not a fulfillment, of the Commission's broader mandate.

In Mr. Johnson's case, the purposes of rehabilitation, deterrence, and protection of the public would all best be served by his developing marketable skills, building family and community support, obtaining counseling to deal with a tremendous history of loss and trauma, and developing better coping skills. Mr. Johnson is still a young man, and there s still real hope for him to reform his ways and become a law-abiding member of society. Mr. Johnson is determined to set his life on the right track and will increase his efforts upon release to become a law-abiding and productive member of society. Mr. Johnson has a history of drug abuse and was exposed to illegal drugs at a young age as noted in the PSR. It is the defendant's position that his criminal behavior was partly dictated by his use of drugs as well as other factors. Nevertheless, he has strong support from his family, who will assist him with rehabilitation once he is released

from prison.  He also has five young children that need his emotional and financial support.  Mr. Johnson respectfully requests the Court's consideration of these factors in fashioning his sentence.  While a downward variance is not to say, of course, that Mr. Johnson's prior convictions should be ignored.  Rather, it implements the Sentencing Commission's recognition that in some cases, a defendant's criminal history category over-represents the seriousness of his criminal history.

## VI. Conclusion

For all of the foregoing reasons, Mr. Johnson respectfully requests a sentence below the guideline range.  He further requests that the court finds that he is allowed to participate in a drug treatment program and considers a wavier of the fine.

Thank you for your thoughtful consideration of this matter.

Respectfully,

/s/ Tonya Powell Franklin

### CERTIFICATE OF SERVICE

I, Tonya Powell Franklin, attorney for the Defendant, Brian Johnson, in the above and foregoing action, do hereby certify that I have caused to be transmitted, via facsimile, a true and correct copy of the above Sentencing Memorandum to the following:

Curtis Ivy, AUSA
Curtis.Ivy@usdoj.gov

This, the 26th day of November, 2010.

/s/ Tonya Powell Franklin_____